**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| EDGEWOOD HIGH SCHOOL | ) | |
| OF THE SACRED HEART, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 3:19-CV-683 |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MADISON, WISCONSIN; | ) | |
| CITY OF MADISON ZONING BOARD | ) | |
| OF APPEALS; Zoning Administrator | ) | |
| MATTHEW TUCKER, in his official | ) | |
| capacity; and Director of Madison's | ) | |
| Building Inspection Division GEORGE | ) | |
| HANK, in his official capacity, | ) | |
| | | |
| Defendants. | | |

---

## ANSWER AND AFFIRMATIVE DEFENSES

---

Defendants City of Madison, Wisconsin, City of Madison Zoning Board of Appeals,

Matthew Tucker, and George Hank, by their attorneys, Boardman & Clark LLP, answer Plaintiff

Edgewood High School of the Sacred Heart, Inc.'s Complaint as follows:

## <u>INTRODUCTION</u>

1.  *For nearly a century, Edgewood High School of the Sacred Heart, Inc.,
    a/k/a Edgewood High School ("Edgewood") has used its on-campus
    athletic field to host athletic contests and other activities in furtherance of
    its religious mission and values. However, the City and its officials have
    now imposed the City's land use regulations in an arbitrary, unequal, and
    unlawful manner to prohibit Edgewood and its students from using the
    field for anything other than team practices and physical education
    classes. All of the City's public high schools and the University of
    Wisconsin-Madison share the same zoning classification as Edgewood, yet
    the City is imposing these restrictions on Edgewood alone.*

    **ANSWER:**  Defendants deny the allegations in this Paragraph.

2.   *Further, the City is refusing to deliver to Edgewood the electrical permit needed to install outdoor lighting around the field and provide for the safety of those engaging in activities at night. The City is withholding the permit even though it approved Edgewood's lighting application for compliance with the City's lighting and zoning ordinances on February 27, 2019 and March 1, 2019, respectively.*

**ANSWER:**   Defendants admit that Edgewood submitted a lighting application on February 22, 2019 and that the City has not provided Edgewood with an approved permit. Defendants deny the remaining allegations of this Paragraph.

3.   *This civil action challenges the arbitrary, unequal, and unlawful manner in which the City is imposing its land use regulations to restrict Edgewood's use of its field and the City's refusal to issue Edgewood its electrical permit. Edgewood asserts federal claims under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. §§ 2000cc et seq., the United States Constitution, and state law claims over which this Court may exercise supplemental jurisdiction.*

**ANSWER:**   Defendants admit that Edgewood asserts claims against the City for behavior that Edgewood contends is arbitrary or unequal, including claims under Wisconsin law, claims under RLUIPA, and claims under the United States Constitution. Defendants deny that any of Edgewood's claims have merit.

## THE PARTIES

4.   *Edgewood is a Catholic high school founded in 1881 by the Congregation of the Dominican Sisters of Sinsinawa (the "Dominican Sisters of Sinsinawa").*

**ANSWER:**   Defendants admit that Edgewood is a Catholic high school. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations and therefore deny the same.

5.   *In 1893, the Dominican Sisters of Sinsinawa moved the school, then known as Sacred Heart Academy, to a property located on the shore of Lake Wingra in Madison, Wisconsin.*

2

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

6.      *The Sisters renamed their academy to Sacred Heart Academy at Edgewood in 1895 and then opened the doors to Edgewood High School of the Sacred Heart in 1927.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

7.      *Edgewood has operated continuously on its site located at 2219 Monroe Street in Madison since 1927.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

8.      *Edgewood shares its campus with its two sister institutions, Edgewood College and Edgewood Campus School.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

9.      *While all three institutions have been and remain under the sponsorship of the Dominican Sisters of Sinsinawa, each was separately incorporated in 2011.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

10.      *Edgewood is organized as a Wisconsin nonprofit corporation.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

11.      *Edgewood is a "religious institution" under RLUIPA, 42 U.S.C § 2000cc et seq.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. Defendants note that RLUIPA does not expressly define that term. To the extent a response is required, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

12.   *Defendant City of Madison (the "City") is a municipality in Dane County, Wisconsin.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

13.   *The City is a "government" under RLUIPA, 42 U.S.C. § 2000cc-5(4)(A), and is responsible for its ordinances as well as the acts, omissions, and interpretations of its zoning administrator, agents, boards, and councils.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that it is a "government" under the definition provided by RLUIPA, 42 U.S.C. § 2000cc-5(4)(A), but they deny the remaining allegations of this Paragraph.

14.   *Defendant Matthew Tucker ("Tucker") is the City's Zoning Administrator and is sued in his official capacity. As Zoning Administrator, Tucker is overseen by the Building Inspection Division Director.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

15.   *Defendant George Hank ("Hank") is the Director of the City's Building Inspection Division and is sued in his official capacity. As Director of the Building Inspection Division, Hank oversees is the Zoning Administrator, Tucker.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

16.   *Defendant City of Madison Zoning Board of Appeals ("Zoning Board") is a municipal board established by Wis. Stat. § 62.23(7)(e) and Madison Gen. Ordinance (M.G.O.) § 28.205. The Zoning Board has the jurisdiction and authority to, among other things, hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the Zoning Administrator in the enforcement of Madison's zoning laws.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit the allegations in this Paragraph.

## JURISDICTION AND VENUE

17.   *This Court has subject matter jurisdiction over this case pursuant to 28 USC § 1331, as this action arises under the First and Fourteenth Amendments to the United States Constitution; under 28 USC § 1343(a)3,*

*in that it is brought to redress deprivations under color of state law of rights, privileges and immunities secured by the United States Constitution; under 28 USC § 1343(a)4, in that it seeks to recover equitable relief under acts of Congress, specifically 42 USC § 1983 and 42 USC § 2000cc, which provide causes of actions for the protection of civil and constitutional rights, injunctive remedies and damages, and under 28 § 2201(a), to secure declaratory injunctive relief under 28 USC § 2202; and under 42 USC § 1988, to secure reasonable attorney fees as part of the case. This Court may also exercise supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.*

**ANSWER:**   Defendants admit that this Court has subject matter jurisdiction over Edgewood's federal-law claims and that this Court may exercise supplemental jurisdiction over Edgewood's state-law claims.

18.   *Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred in the Western District of Wisconsin and at least one defendant resides in this district.*

**ANSWER:**   Defendants admit that venue in this District is proper.

19.   *Since the 1920's, Edgewood has had an athletic field and track located on its campus at 2219 Monroe Street.*

**ANSWER:**   Defendants admit that Edgewood currently has an athletic field and track located on its campus at 2219 Monroe Street, but they lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this Paragraph and therefore deny the same.

20.   *A new football field was installed for the 1930-31 school year.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

21.   *On November 7, 1930, the new field was blessed and consecrated to God. Father Leo officiated the ceremony, and the entire student body was present for the field's dedication.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

22.   *Below are photographs of the field and track taken over the years:*



(Photo: 1929 Edgewood football game at Monroe Street field)



(Photo: 1930 Edgewood football game on field with school in the background)



(Photo: 1931 Edgewood football game at current Woodrow Street field location)



(Photo: 1932 Edgewood football game at current Woodrow Street field location)



(Photo: Edgewood High School's Track & Athletic Field 1937 on the right).



(Photo: Edgewood football field and track in 2015)

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

23.   *For nearly a hundred years, Edgewood has lawfully and openly used its track and field to host athletic contests and other activities. Athletic contests held on the field further Edgewood's religious mission and values, and always have.*

**ANSWER:**   Defendants admit that Edgewood has recently used its track and field to host athletic contests, but deny that such use was lawful pursuant to Edgewood's existing Master Plan. Defendants lack knowledge or information sufficient to form a belief as to the truth of the remaining allegations in this Paragraph and therefore deny the same.

24.   *In or about April 1997, Edgewood submitted to the City an approved "Stormwater Management Plan" (dated April 7, 1997) which indicated that Edgewood would be replacing its old track and field with "a new 400 meter running track with soccer/football field and underdrain system." Exhibit A, Edgewood High School Master Plan (2014) (hereinafter "Edgewood Master Plan"), at A.3.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

25.   *Edgewood began a renovation project in 2015 to "rebuild [ ] its athletic field and track," creating "cutting-edge running surfaces for track and field training as well as state-of-the art artificial turf for outdoor sports, including football, baseball, softball, soccer, track, and lacrosse." Exhibit B, Edgewood High School, Our History (2019).*

7

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

26.   *This 2015 renovation also included installation of a new scoreboard:*



**ANSWER:**   Defendants admit the allegations in this Paragraph.

27.   *Today, the track and field is named the Goodman Athletic Complex.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

28.   *Through sponsorship of Edgewood, the Dominican Sisters of Sinsinawa carry out their religious mission to teach and to preach.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

29.   *In furtherance of the sincerely held religious beliefs of the Dominican Sisters of Sinsinawa and of Edgewood, Edgewood's mission is to "educate the whole student for a life of learning, service, personal responsibility through a rigorous academic curriculum that embraces the Sinsinawa Dominican values of Truth, Compassion, Justice, Partnership and Community." **Exhibit C**, Edgewood Mission Statement.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

30.   *For nearly a century, athletics has been a primary way in which Edgewood accomplishes its Catholic mission to educate the whole student, teach personal responsibility, and instill and promote the Sinsinawa Dominican values.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

31. *Edgewood is not seeking to use its track and field exclusively for athletic events—even though athletics are integral to the school's primary religious mission and are engaged in in furtherance of the school's sincerely held religious beliefs. Edgewood is also seeking to be free to engage in inherently religious activities such as community outreach, evangelism, fellowship, assembly, prayer and worship on the field. Athletic events and the field provide the context and platform for these inherently religious activities to be shared with the community in furtherance of the school's religious mission and values. They are also all allowable uses under M.G.O. § 28.097. Exhibit D Relevant Portions of Madison General Ordinances.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations alleged in the first three sentences of this Paragraph and therefore deny the same. The fourth sentence of this Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that hosting athletic events is an allowable use for the Edgewood field.

32. *Edgewood's athletics teams are called the Edgewood Crusaders.*

**ANSWER:** Defendants admit the allegations in this Paragraph.

33. *As listed on the Edgewood Crusaders Athletics website, the goals of Edgewood Athletics are to:*

- *Promote the mission and goals of Edgewood High School*
- *Maintain Christian, sportsmanlike behavior at all times*
- *Improve motor skills*
- *See the need for better health and physical fitness*
- *Promote a desire to succeed and excel*
- *Foster the development of moral and ethical standards*
- *Learn the high ideals of fairness in all human relationships*
- *Learn to make proper decisions under pressure*
- *Enjoy competition and comradeship.[1]*

---

[1] *Edgewood Crusaders Athletics, Goals of Edgewood Athletics*
*https://www.edgewoodcrusadersathletics.com/goalsofathletics (last visited Aug. 2, 2019).*

**ANSWER:**     Defendants admit that this Paragraph accurately quotes from the website located at https://www.edgewoodcrusadersathletics.com/goalsofathletics as of October 8, 2019. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this Paragraph and therefore deny the same.

34.     *Athletics is also a primary way Edgewood students connect with each other and experience the Dominican value of community.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

35.     *Through athletics, Edgewood students develop discipline, character, and unity.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

36.     *By hosting athletics on its field, Edgewood is able to draw people to its campus and display its values to the community.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

37.     *Edgewood students, athletes, and coaches often pray before athletic contests.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

38.     *Edgewood offers students the ability to participate on twenty-five different boys or girls sports teams.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

39.     *Approximately 75% of Edgewood students participate in athletics.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

40. *Edgewood athletics provides a unique opportunity to educate, congregate in community, recreate, and celebrate the school's values.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

41. *Edgewood athletics is critical to the school's mission to increase enrollment.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

42. *In furtherance of the Sinsinawa Dominican values of Compassion, Justice, Partnership and Community, part of Edgewood's religious mission is to provide an alternative option to the underserved communities in Madison and to increase the racial and ethnic diversity of the school. The strength and appeal of Edgewood's athletics program is a key way Edgewood is able to reach and attract students from these underserved communities.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

43. *For nearly a century, Edgewood's high-school teams have continuously used its athletic field for events like football, soccer, track and field, baseball, and summer sports camps.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

44. *For example, Edgewood hosted multiple football games and soccer games on the athletic field during the 2018-19 academic year.*

**ANSWER:** Defendants admit that soccer games appear to have been played on the field on March 27, 2019; March 29, 2019; April 2, 2019; April 16, 2019; April 30, 2019; and

May 7, 2019. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this Paragraph and therefore deny the same.

45.   *Since 1999, Edgewood has hosted numerous track meets (including parochial meets and meets for youth on the West Side of the City) on the field.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

46.   *Lacrosse matches have been regular events on the field since 2015.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

47.   *Since at least 1999, the field has included bleachers for fans.*

**ANSWER:**   Defendants admit that there are currently bleachers next to the field at Edgewood but they lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this Paragraph and therefore deny the same.

48.   *Beyond student athletic contests, Edgewood has also through the years allowed the community to access the field and other parts of its property for recreational purposes, including the Monroe Street Farmers' Market.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

49.   *Edgewood has also hosted other activities on its athletic field in furtherance of its religious mission and values and is compelled by its sincerely held religious beliefs to use the field for other religious uses related to the school's primary religious mission, including various assemblies, masses, convocations, and community events.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

50.   *The City adopted its current Zoning Code on October 26, 2011, with an effective date of January 2, 2013. See City of Madison ORD-12-00134.*

**ANSWER:**    Defendants admit that the City adopted the zoning code on October 26, 2012, with an effective date of January 2, 2013. Defendants deny the remaining allegations in this Paragraph.

51.    *As part of the new code, the City created a new zoning designation called the "Campus-Institutional District," which is designed for "the City's major educational and medical institutions." See generally* **Exhibit D**.

**ANSWER:**    Defendants admit the allegations in this Paragraph.

52.    *Campus-Institutional Districts were created to "accommodate the growth and development needs of these institutions, and coordinate the master plans of these institutions with the City's plans, policies and zoning standards."* **Exhibit D** *at M.G.O. § 28.097(1).*

**ANSWER:**    This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that this Paragraph accurately quotes from M.G.O. § 28.097(1) but deny the remaining allegations in this Paragraph.

53.    *Prior to 2013, the City zoned Edgewood as a residential district. See* **Exhibit E**, *Planning Division Staff Report on Edgewood Master Plan 6 (Mar. 24, 2014) ("Planning Division Staff Report").*

**ANSWER:**    Defendants admit the allegations in this Paragraph.

54.    *After 2013, as "part of the mapping of the new Zoning Code," the City zoned Edgewood as a Campus-Institutional District under Section 28.097, which remains its zoning classification today. See* **Exhibit E**, *Planning Division Staff Report 6.*

**ANSWER:**    Defendants admit the allegations in this Paragraph.

55.    *In addition to Edgewood, the City also rezoned the following institutions, among others, into a Campus-Institutional District: the University of Wisconsin-Madison, Madison Area Technical College, James Madison Memorial High School, Madison East High School, Madison West High School, and Madison La Follette High School.*

**ANSWER:**    Defendants admit that in addition to Edgewood, the high schools listed in this Paragraph are located in Campus-Institutional District zoning, as are portions of the

University of Wisconsin-Madison campus and the Madison College Truax campus. Defendants

deny the remaining allegations in this Paragraph.

56. *Campus-Institutional Districts are unique in Madison's Zoning Code because they do not operate under the permitted/conditional use framework applicable to other zoning districts. Rather, all "uses allowed within the Campus Institutional District are listed separately" as either primary or secondary uses under Section 28.097.* **Exhibit D** *at M.G.O. § 28.091(1).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is

required. To the extent a response is required, the text of the ordinance speaks for itself.

Defendants deny all allegations inconsistent with the text of the ordinance.

57. *The separate list is found at Section 28.097(3), which divides permitted uses in the Campus-Institutional district into "primary or secondary" uses.* **Exhibit D** *at M.G.O. § 28.097(3).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is

required. To the extent a response is required, the text of the ordinance speaks for itself.

Defendants deny all allegations inconsistent with the text of the ordinance.

58. *The list of permitted "primary uses" in a Campus-Institutional District includes "educational uses associated with colleges, universities, and secondary and primary schools, including classroom buildings, libraries, and offices."* **Exhibit D** *at M.G.O. § 28.097(3)(a)1 (capitalization altered).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is

required. To the extent a response is required, the text of the ordinance speaks for itself.

Defendants deny all allegations inconsistent with the text of the ordinance.

59. *The list of permitted "secondary uses" includes "indoor and outdoor sports and recreational facilities"; "places of worship"; "stadiums, auditoriums, and arenas, open or enclosed," and "other uses related to the institution's primary mission."* **Exhibit D** *at M.G.O. § 28.097(3)(b)5, 10, 15, 17 (capitalization altered).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of the ordinance speaks for itself. Defendants deny all allegations inconsistent with the text of the ordinance.

60.   *The term "athletic contest" is not used or defined anywhere in Madison's Zoning Code.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

61.   *The Campus Institutional Ordinances allow schools in Campus-Institutional Districts to use their property, by right and without seeking a permit or other approval, as outdoor sports and recreational facilities, outdoor stadiums, outdoor arenas, and for other uses related to the institution's primary mission. Exhibit D at M.G.O. §§ 28.097(3).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent that a response is required, the text of the ordinance speaks for itself; Defendants deny the allegations in this Paragraph to the extent they disregard the legal significance of Edgewood's Master Plan or are inconsistent with the text of the ordinance. Further, Defendants affirmatively state that conditional-use approval is required to construct a building exceeding 4,000 square feet in floor area.

62.   *Accordingly, Edgewood is entitled to use its athletic field for athletic contests as well as any other uses related to the school's primary mission as secondary uses and as a matter of law under Madison's Zoning Code.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

63.   *Apart from the Zoning Code, Edgewood has a legal right under Wisconsin Law to use its athletic field to host games, given its established and consistent use for that purpose beginning nearly a century ago.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

64.   *Under the new zoning code, institutions zoned as a Campus-Institutional District may voluntarily submit a "Campus Master Plan" to the City in order to facilitate and "guide the future growth of those institutions." Id. at M.G.O. § 28.097(1)–(2); see **Exhibit E**, Planning Division Staff Report 6.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of the ordinance speaks for itself. Defendants deny all allegations inconsistent with the text of the ordinance.

65.     *To that end, a Master Plan generally includes a "description of existing conditions" and "the proposed conditions" on the campus, including "future needs/capital improvements," "phasing of proposed improvements," and "future land uses and buildings." **Exhibit D** at M.G.O. § 28.097(5)(c)(1)–(2) (capitalization altered).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of the ordinance speaks for itself. Defendants deny all allegations inconsistent with the text of the ordinance.

66.     *For institutions zoned as a Campus-Institutional District as of the effective date of Section 28.097—which includes Edgewood and all of the other institutions listed in paragraph 60 above—creation of a master plan is optional, but "[e]ncourage[d]." See **Exhibit D** at M.G.O. § 28.097(1)(c), (2).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of the ordinance speaks for itself. Defendants deny all allegations inconsistent with the text of the ordinance.

67.     *However, for any "District created after the effective date of this ordinance," submission of a master plan is mandatory. **Exhibit D** at M.G.O. § 28.097(2)(a).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of the ordinance speaks for itself. Defendants deny all allegations inconsistent with the text of the ordinance.

68.     *If an institution submits a master plan, and that plan is approved by the City, then that plan governs the development of new structures within the Campus-Institutional District for the life of the plan, which is ten years. **Exhibit D** at M.G.O. § 28.097(2)(b)–(d), (4), (7).*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of the ordinance speaks for itself. Defendants deny all allegations inconsistent with the text of the ordinance.

69. *Master plans expire ten years from when they are approved.*

**ANSWER:** Defendants admit the allegations in this Paragraph.

70. *For any "buildings properly identified on a Campus Master Plan," the District need only obtain approval from "an architectural review committee prior to construction," rather than obtain "conditional use approval" from the City. See **Exhibit D** at M.G.O. § 28.097(2)(c), (7)(a); see also **Exhibit E**, Planning Division Staff Report 7.*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of the ordinance speaks for itself. Defendants deny all allegations inconsistent with the text of the ordinance.

71. *In other words, if the City approves a master plan, then "the specific projects shown on the campus Master Plan will not be reviewed by the Plan Commission [again] if those projects adhere to the approved master plan." **Exhibit E**.*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of the ordinance speaks for itself. Defendants deny all allegations inconsistent with the text of the ordinance.

72. *The Campus Institutional Ordinance also allows, but does not require, those schools to submit a master Plan to create a streamlined development-approval process to accommodate their development needs during the ten year term of the master plan.*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of the ordinance speaks for itself. Defendants deny all allegations inconsistent with the text of the ordinance.

73. *Master Plans govern the development of structures, not an institution's existing or future uses of or activities on property.*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in this Paragraph.

74. *To date none of the City's four public high schools have submitted a master plan for approval. Only Edgewood and the University of Wisconsin-Madison have adopted a master plan. See **Exhibit F**, Planning Division, Letter to Gary Brown, dated October 4, 2017; **Exhibit G**, Planning Division Staff Report on University of Wisconsin Master Plan 8 (June 19, 2017).*

**ANSWER:** Defendants admit the allegations in this Paragraph.

75. *In January 2014, Edgewood voluntarily submitted a Master Plan to the City under Section 28.097. **Exhibit A**, Edgewood Master Plan.*

**ANSWER:** Defendants admit the allegations in this Paragraph.

76. *Edgewood's Master Plan includes the requirements outlined by Section 28.097, namely a description of "existing conditions" and a description of "proposed conditions" for future development on campus. **Exhibit A** at 5, 14–19 (Part 2), 20–51 (Part 3)); compare M.G.O. § 28.097(5)(c)1–2.*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of the ordinance speaks for itself. Defendants deny all allegations inconsistent with the text of the ordinance.

77. *These future developments include the construction of nineteen proposed buildings. **Exhibit A** at 24–25.*

**ANSWER:** Defendants admit the allegations in this Paragraph, with the clarification that future developments include the construction of nineteen proposed buildings and additions to existing buildings.

78. *Edgewood designed its Master Plan to ensure "that all stakeholders are aware of potential future developments on campus" and to "provide a basis for implementing [Edgewood's] development decisions." **Exhibit A** at 5.*

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the purposes Edgewood had in mind when it designed its Master Plan, and therefore Defendants deny the same.

79.    *The plan "is not intended to be a detailed blueprint for construction" on Edgewood's campus.* ***Exhibit A*** *at 5.*

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to Edgewood's intent and therefore deny the same.

80.    *The purpose of the Master Plan was not to establish Edgewood's right to continue to use the field for its existing activities. Edgewood already had the legal right to continue those activities under both state law and Madison's Zoning Ordinances.*

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief as to the purposes Edgewood had in mind when it designed its Master Plan, and therefore Defendants deny the same. Defendants deny that Edgewood already had the legal right to continue those activities under both state law and Madison's Zoning Ordinances when the Master Plan was put into effect.

81.    *Edgewood's Master Plan did not list all the then-existing activities which occur on Edgewood's field or the rest of Edgewood's campus as these activities were already established before Edgewood's Master Plan was submitted.* ***Exhibit H****, Letter from Douglas R. Hursch to Brian Munson, dated Jan. 4, 2019.*

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

82.    *Listing all activities performed on Edgewood's athletic field was not a prerequisite for those activities to continue to be allowed during the term of the Master Plan.*

**ANSWER:**    Defendants object that this allegation is vague and confusing and therefore lack knowledge sufficient to form a belief about the truth of any allegations in this Paragraph and

therefore deny the same. Subject to that objection, Defendants deny that Edgewood is allowed to

hold "athletic contests" on its field pursuant to its existing Master Plan.

83.     *The City approved Edgewood's Master Plan, subject to conditions not relevant here, on April 22, 2014.* **Exhibit I**, *Letter to Douglas R. Hursch dated April 22, 2014.*

**ANSWER:**     Defendants admit that the City approved Edgewood's Master Plan, with

conditions, on April 22, 2014. Defendants deny that those conditions are not relevant here.

84.     *Edgewood's approved Master Plan referenced the new, rebuilt track and athletic field.* **Exhibit A**, *Edgewood Master Plan, at A.3 § 3.3.*

**ANSWER**:     Defendants deny that Edgewood's Master Plan referenced the new, rebuilt

track and athletic field. The cited reference is to Edgewood's Stormwater Management Plan.

85.     *In the Planning Division Staff Report, which recommended approval of the plan to the Planning Division, the City noted that no Master Plan had yet been approved for a Campus-Institutional District.* **Exhibit E**, *Planning Division Staff Report 6.*

**ANSWER:**     Defendants admit the allegations in this Paragraph.

86.     *Edgewood's Master Plan was the first Master Plan that the Plan Commission was ever asked to consider.* **Exhibit E**, *Planning Division Staff Report 6.*

**ANSWER:**     Defendants admit the allegations in this Paragraph.

87.     *The City also approved Edgewood's First Amendment to its Master Plan in 2015.*

**ANSWER:**     Defendants admit the allegations in this Paragraph.

88.     *The University of Wisconsin is zoned as a Campus Institutional District, like Edgewood.*

**ANSWER:**     Defendants admit that portions of the University of Wisconsin-Madison

campus are located in Campus-Institutional District zoning. Defendants deny the remaining

allegations in this Paragraph.

89.     *The University of Wisconsin submitted a Master Plan under the Campus Institutional District Ordinances in 2017, like Edgewood did in 2014.[2]*

**ANSWER:**   Defendants admit that in 2017 the University of Wisconsin submitted a master plan under the Campus-Institutional District zoning ordinances. Defendants also admit that in 2014 Edgewood submitted a master plan under the Campus-Institutional District zoning ordinances. Defendants deny the remaining allegations in this Paragraph.

90.     *The City approved the University of Wisconsin's Master Plan in 2017, like it approved Edgewood's in 2014.*

**ANSWER:**   Defendants admit that the City approved the University of Wisconsin's Master Plan but deny that it was in 2017 or that the approval process was like Edgewood's. The Common Council approved and adopted the University of Wisconsin's Master Plan in 2018, and it became effective January 1, 2019.

91.     *The University of Wisconsin has numerous facilities and open spaces dedicated to particular purposes, including facilities and open spaces dedicated to recreation, athletics, and athletic contests.*

**ANSWER:**   Defendants object that this allegation is vague and confusing. Defendants lack knowledge sufficient to form a belief about the truth of any allegations in this Paragraph as written and therefore deny the same.

92.     *The University of Wisconsin Master Plan only identifies a subset of all of the University's facilities and open spaces, and only a subset of the University's facilities and open spaces as being dedicated to recreation, athletics, and athletic contests.*

---

[2] *The University of Wisconsin's Master Plan, which is an over 300-page PDF, is available at the City of Madison's website. See City of Madison Legislative Information Center, File #47245 (May 9, 2017), https:// madison.legistar.com/LegislationDetail.aspx?ID=3100720&GUID=CA974453-66D0-4FE5-BA1C-57FA39D 1C69D (Attachments 7–11).*

**ANSWER:**   Defendants object that this allegation is vague and confusing. Subject to that objection, Defendants lack knowledge sufficient to form a belief about the truth of any allegations in this Paragraph as written and therefore deny the same.

93.   *The University of Wisconsin's Master Plan only describes a very small subset of activities for any of the facilities and open spaces that it does identify.*

**ANSWER:**   Defendants object that this allegation is vague and confusing. Subject to that objection, Defendants lack knowledge sufficient to form a belief about the truth of any allegations in this Paragraph as written and therefore deny the same.

94.   *For example, the University of Wisconsin Master Plan identifies the facilities and open spaces listed immediately below dedicated to recreation, athletics, and athletic contests:*

- *The Nielsen Tennis Stadium, yet it does not state that this facility or open space is used for tennis competitions, tennis practices, or tennis summer camps, among other obvious activities for which the university has used Nielsen Stadium both before and after the effective date of its master plan;*

- *The Natatorium, yet it does not state that this facility is used for swim meets/competitions, diving competitions, or weight lifting, among other obvious activities for which the university has used the Natatorium both before and after the effective date of its master plan;*

- *The Goodman Softball Complex, yet it does not state that this open space is used for softball games, among other obvious activities for which the university has used the Goodman Softball Complex both before and after the effective date of its master plan;*

- *The McClimon Track Facility, yet it does not state that this open space is used for track & field meets or team practices, among other obvious activities for which the university has used the McClimon Track Facility both before and after the effective date of its master plan;*

- *The Near West Fields, yet it does not state that this open space is used for intramural athletic contests, club sport contests, or other athletic competitions or practices, among other obvious activities*

*for which the university has used the Near West Fields both before and after the effective date of its master plan;*

- *The Near East Fields, yet it does not state that this open space is used for intramural athletic contests, club sport contests, or other athletic competitions or practices, among other obvious activities for which the university has used Near East Fields both before and after the effective date of its master plan.*

**ANSWER:**   Defendants admit that the locations listed in this Paragraph are on the University of Wisconsin campus. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in this Paragraph and therefore deny the same. The text of the University of Wisconsin's Master Plan speaks for itself. Defendants deny any allegations inconsistent with the text of the University of Wisconsin's Master Plan.

95.   *Additionally, for example, the University of Wisconsin Master Plan identifies these other facilities and open spaces:*

- *The Memorial Union and Memorial Union Terrace, yet it does not state that this facility and open space is used for weddings and wedding receptions, concerts, meetings, or vending, among other obvious activities for which the university has used these spaces both before and after the effective date of its master plan;*

- *The Memorial Library, yet it does not state that this facility is used for any activities;*

- *Residence Halls, yet it does not state that these facilities are used for any activities.*

**ANSWER:**   Defendants admit that the locations listed in this Paragraph are on the University of Wisconsin campus. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in this Paragraph and therefore deny the same. The text of the University of Wisconsin's Master Plan speaks for itself. Defendants deny any allegations inconsistent with the text of the University of Wisconsin's Master Plan.

96.     *The University of Wisconsin Master Plan does not identify or describe the University Bay Fields or the Cole Recreation Area, both of which host athletic contests.*

**ANSWER:**     Defendants admit that the locations identified in this Paragraph are on the University of Wisconsin campus. Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in this Paragraph and therefore deny the same. The text of the University of Wisconsin's Master Plan speaks for itself. Defendants deny any allegations inconsistent with the text of the University of Wisconsin's Master Plan.

97.     *The University of Wisconsin Master Plan does not include an exhaustive list of activities for any identified facility or open space, including the facilities and open spaces described above.*

**ANSWER:**     Defendants lack knowledge or information sufficient to form a belief as to the remaining allegations in this Paragraph and therefore deny the same. The text of the University of Wisconsin's Master Plan speaks for itself. Defendants deny any allegations inconsistent with the text of the University of Wisconsin's Master Plan.

98.     *Despite Edgewood's nearly 100 years of open use of its athletic field, Administrator Tucker claimed that he did not become "aware of the extensive use of the [Edgewood] athletic field" until after he attended an October 17, 2018 "neighborhood meeting."* **Exhibit J**, *Email from Matthew Tucker, dated Oct. 26, 2018.*

**ANSWER:**     Defendants object to this Paragraph as argumentative. Subject to that objection, Defendants lack knowledge or information sufficient to form a belief about the truth of the allegation that Edgewood openly used its athletic field for nearly 100 years and therefore deny the same. As to the remaining allegations in this Paragraph, Defendants admit that Matthew Tucker sent an email to Brian Munson on October 26, 2018 stating, among other things: "After the neighborhood meeting of Wednesday, October 17, I became aware of the extensive use of the athletic field at the northwest corner of the site."

24

99. *Shortly thereafter, Administrator Tucker notified Edgewood that he believed its use of its athletic field for "athletic contests" was "outside of the allowances" under Edgewood's Master Plan.* **Exhibit J**.

**ANSWER:** Defendants admit that in the same email referenced in the previous Paragraph, Mr. Tucker stated that the "Open Space Plan" identifies the field to be used for "team practices, physical education practices," and that the lack of further language leads him "to the interpretation that current program and usage of the field is operating outside of the allowances of the adopted Master Plan." Defendants deny the remaining allegations in this Paragraph.

100. *According to Administrator Tucker's interpretation and application of Madison's land use regulations, Edgewood may only use its field for "team practices and physical education classes"—any other use or activity is prohibited.*

**ANSWER:** Defendants deny the allegations in this Paragraph, except to admit that under Mr. Tucker's interpretation, Edgewood may use the space for team practices and physical education classes pursuant to its existing Master Plan.

101. *Administrator Tucker's interpretation arbitrarily distinguishes between team practices and physical education classes on one hand and "athletic contests" on the other—even though neither he nor the City has defined "athletic contests."*

**ANSWER:** Defendants deny the allegations in this Paragraph.

102. *According to Administrator Tucker's interpretation and application of Madison's land use regulations, Edgewood is prohibited from using its field for such uses as an outdoor Mass or prayer service, a graduation ceremony, community outreach events (such as the long-running Monroe Street Farmer's Market).*

**ANSWER:** Defendants deny the allegations in this Paragraph.

103. *Madison's Zoning Code does not distinguish between whether indoor or outdoor sports and recreation facilities, stadiums, auditoriums, or arenas may be used to host team practices, physical education classes, or athletic contests.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in this Paragraph to the extent they disregard the legal significance of Edgewood's Master Plan. The text of Madison's Zoning Code speaks for itself. Defendants deny any allegations inconsistent with the text of the code.

104.   *It is arbitrary and irrational to say that one school can use its athletic field for "athletic contests," but another school with the same zoning classification cannot use its athletic field for the same purpose.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in this Paragraph.

105.   *It is arbitrary and irrational to say that one school can use its athletic field for "team practices" but not for "athletic contests," but another school with the same zoning classification can use its athletic field for either or both activities.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in this Paragraph.

106.   *In attempt to support his interpretation, Administrator Tucker cited Section 3.8 of Edgewood's Campus Master Plan, entitled "Open Space Plan" and located within the "Proposed Conditions" part of the plan, which "identifies the athletics field to be used for 'team practices, physical education practices,'" in the future.* **Exhibit J***; see Exhibit A, Edgewood Master Plan 20, 47.*

**ANSWER:**   Defendants object to this Paragraph as argumentative. Subject to that objection, Defendants admit that in an October 26, 2018 email, Mr. Tucker stated that the "Open Space Plan" identifies the field to be used for "team practices, physical education practices," and that the lack of further language leads him "to the interpretation that current program and usage of the field is operating outside of the allowances of the adopted Master Plan." Defendants deny the remaining allegations in this Paragraph.

107. *Administrator Tucker ignored other passages of the Edgewood Master Plan where Edgewood described the use of its athletic field as being for an "athletic field" and "recreation space" – just like the University of Wisconsin-Madison describes many of its outdoor and indoor athletic fields and facilities.*

**ANSWER:**   Defendants object to this Paragraph as argumentative. Subject to that objection, Defendants deny the allegations in this Paragraph.

108. *Edgewood identified team practices and physical education classes as examples of activities which will occur on its athletic field in the future during the term of the Master Plan but did not intend, and never would have intended, these examples to be read as an exhaustive and restrictive list of activities to be performed on the field for a ten-year period.*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

109. *Administrator Tucker arbitrarily decided to interpret these examples of athletic activities as a restrictive list that the City is now using to bar Edgewood and its students from engaging in any other activities on the field.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

110. *According to the Administrator Tucker, any "programming" outside of the two activities Mr. Tucker dubs "team practices and physical education classes"—including "athletic contests"—is not an allowed activity on the athletic field. **Exhibit J**, Email from Matthew Tucker, dated Oct. 26, 2018.)*

**ANSWER:**   Defendants deny the allegations in this Paragraph, except to admit that under Mr. Tucker's interpretation, Edgewood is not allowed to hold "athletic contests" on its field pursuant to its existing Master Plan.

111. *Team practices and physical education classes involve athletic contests, as does calling an open space an "athletic field."*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

112. *According to a Code Enforcement Worksheet produced by the City, City Inspector Jacob Moskowitz was tasked sometime in 2019 with surveilling*

*Edgewood's girls' soccer games. **Exhibit K**, Code Enforcement Worksheet produced by Inspector Jacob Moskowitz.*

**ANSWER:**   Defendants deny that Exhibit K shows that City Inspector Jacob Moskowitz was tasked with surveilling Edgewood's girls' soccer games and affirmatively assert that the text of the Code Enforcement Worksheet attached as Exhibit K speaks for itself. Defendants deny any allegations inconsistent with the text of the Code Enforcement Worksheet.

113.   *In his worksheet, Inspector Moskowitz noted four different dates on which the Edgewood girls' soccer team was playing soccer on the soccer field. He also noted that the "national anthem was played as both teams stood in a line in the center of the field." **Exhibit K**.*

ANSWER:   The text of Exhibit K speaks for itself. Defendants deny any allegations inconsistent with the text of Exhibit K.

114.   *Based on Inspector Moskowitz's surveillance observations, Administrator Tucker issued an "Official Notice" against Edgewood on April 1, 2019. **Exhibit L**, official Notice, dated April 1, 2019.*

**ANSWER:**   Defendants admit that the City of Madison Building Inspection Division issued an "Official Notice" against Edgewood on or around April 1, 2019 but deny that Mr. Tucker issued the notice or that it was based on Inspector Moskowitz's surveillance observations, many of which occurred after that date.

115.   *The notice asserted that Edgewood violated Section 28.097 by holding "athletic contests" on its athletic field, on the grounds that "[t]he Campus Master Plan states that the athletic field is used for team practices and physical education classes" only. **Exhibit L.***

**ANSWER:**   Defendants admit that the Official Notice states that there has been a violation of M.G.O. § 28.097 and calls upon Edgewood to "[d]iscontinue holding athletic contests on the field at 2219 Monroe Street." Defendants further admit that the Official notice continues:

The Campus Master Plan states that the athletic field is used for team practices and physical education classes. The Master Plan can be amended pursuant to MGO 28.097(10). Edgewood could accomplish this by proceeding with the Campus Master Plan amendment currently on file with the Planning Division.

116.    *The notice then ordered Edgewood to "[d]iscontinue holding athletic contests on [its] athletic field." **Exhibit L***.

**ANSWER:**    Defendants object to the use of "ordered" in this Paragraph as vague and confusing. Subject to that objection, Defendants admit that the Official Notice identifies the "corrections required," which in this case calls upon Edgewood to "[d]iscontinue holding athletic contests on the field at 2219 Monroe Street." The Official Notice also clearly states that "[t]his notice does not start any legal action. However, if the violations are not corrected by the due date listed below, the Building Inspections Division may issue citation(s), and/or refer the situation to the City Attorney's Office."

117.    *A second "Official Notice" from the Zoning Administrator followed on May 15, 2019. **Exhibit M**, Official Notice, dated May 15, 2019.*

**ANSWER:**    Defendants admit that the City of Madison Building Inspection Division issued an "Official Notice" against Edgewood on or around May 15, 2019 but deny that Zoning Administrator Tucker issued the notice.

118.    *This notice again asserted that Edgewood violated Section 28.097, specifically with regard to "athletic contests taking place on the athletic field" in March, April, and May. **Exhibit M***.

**ANSWER:**    The text of Exhibit M speaks for itself. Defendants deny any allegations inconsistent with the text of Exhibit M.

119.    *The second Official Notice listed seven separate violations, including the violations listed in the first notice. These "violations" included the playing of high-school girls' soccer games, a boys' lacrosse game, and a track meet.*

**ANSWER:**     The text of Exhibit M speaks for itself. Defendants deny any allegations inconsistent with the text of Exhibit M.

120.   *The notices also stated that "[a]ny person violating any provision of the City Ordinances enforced by the Building Inspection Division is subject to the penalties provided by the appropriate Ordinance violated." **Exhibit M**.*

**ANSWER:**     The text of the notices speak for itself. Defendants deny any allegations inconsistent with the text of Exhibit M.

121.   *Pursuant to M.G.O. § 28.207 (Penalties), Edgewood is subject to a fine of up to $1,000 for each violation, and each day or portion thereof the alleged violation continues shall be considered a separate offense.*

**ANSWER:**     This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Edgewood is currently subject to fines for the activities listed in the Notices referenced in the preceding Paragraphs. The text of the ordinance speaks for itself.

122.   *The City departed from normal zoning practices in its treatment of Edgewood's use of its property.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

123.   *The expressions of community bias were followed by irregularities in the City's interpretation and enforcement of its land use regulations.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

124.   *None of the other schools located in the Campus-Institutional District have received a zoning violation or alleged to be in violation of the City's Zoning Code for hosting an athletic contest on its athletic field.*

**ANSWER:**     Defendants object to this Paragraph as argumentative and misleading. Subject to those objections, Defendants state that pursuant to Edgewood's Master Plan, the area in question is designated as an open space, not as a stadium or outdoor recreation facility. None of the other schools located in Campus-Institutional District zoning have a master plan that

restricts the use of open spaces in the same manner that Edgewood's Master Plan does. Defendants admit that they are not aware of any allegations that other schools located in Campus-Institutional District zoning are in violation of the City's zoning code with respect to unpermitted use of open spaces.

125. *On February 22, 2019, Edgewood, in accordance with the City's outdoor lighting ordinance, submitted to the City an application for Outdoor Lighting for its athletic field.*

**ANSWER:** Defendants admit that Edgewood submitted to the City an application for Outdoor Lighting on February 22, 2019. The remainder of the allegations in this Paragraph assert a legal conclusion to which no response is required. To the extent a response is required, defendants deny those allegations.

126. *On February 27, 2019, the Building Inspection Division reviewed and approved Edgewood's application.* **Exhibit N***, City of Madison Site Plan Verification.*

**ANSWER:** Defendants deny the allegations in this Paragraph.

127. *Soon afterward, the City informed Edgewood that it would not release the approved electrical permits for the installation and use of the lights in the new lighting system. The City claimed that allowing Edgewood to install the lights would violate Edgewood's Master Plan because the Master Plan did not identify the location or height of the light poles.*

**ANSWER:** Defendants admit that in or around March 2019, a representative of the City informed Edgewood that it would not issue a permit for installation and use of a new lighting system. Defendants further admit that installation and use of a new lighting system would violate Edgewood's Master Plan. Defendants deny the remaining allegations in this Paragraph.

128. *The City had also previously granted electrical permits for the installation and use of lights in lighting systems at the Madison Memorial High School athletic complex.* **Exhibit O***, City Electrical Permit for Madison Memorial High School.*

**ANSWER:**    Defendants admit that the City had previously granted electrical permits for the installation and use of lights in lighting systems at the Madison Memorial High School athletic complex. Defendants deny the remaining allegations in this Paragraph.

129.    *Edgewood's application matched Madison Memorial High School's application, which was approved and installed without any opposition from the city.*

**ANSWER:**    Defendants object to this Paragraph as vague and confusing. Subject to that objection, Defendants deny that Edgewood's application and Madison Memorial High School's application were decided under similar facts and circumstances.

130.    *Edgewood intends to continue using its athletic field to host athletic contests and pursue its religious mission through athletics on the field for these activities are all compelled by and integral to the sincerely held religious beliefs and mission of the Dominican Sisters of Sinsinawa and of Edgewood.*

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

131.    *Edgewood intends to continue using its athletic field for other uses related to the institution's primary religious mission and in furtherance of its sincerely held religious beliefs.*

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

132.    *If the City's prohibition of the Edgewood's uses is upheld, Edgewood will be required to completely forego hosting athletic contests and other religious land uses on its field—which Edgewood has improved and used for such uses for nearly a century – until its Master Plan expires in 2024.*

**ANSWER:**    Defendants object to the allegations in this Paragraph as argumentative. Subject to that objection, Defendants deny that the City has a "prohibition of the Edgewood's

uses." The remainder of this Paragraph alleges legal conclusions to which no response is required. To the extent a response is required, defendants deny those allegations.

133.  *If Edgewood is not allowed to continue hosting athletic contests on its athletic field, Edgewood will experience the following additional burdens:*

    *a.  Edgewood will incur substantial expense to secure other locations at which its students can participate in "athletic contests";*

    *b.  Edgewood will forfeit most of the value of the rebuilt field and track;*

    *c.  Edgewood and its students will suffer significant additional aggravation and inconvenience of not being able to play their games on Edgewood's on-campus athletic field;*

    *d.  Edgewood will face fines of up $1,000 a day if it chooses to engage in or allow any activity on its athletic field other than "team practices" and "physical education classes";*

    *e.  Edgewood and its students will be cast in a false and negative light in the community; and*

    *f.  Edgewood will be unable to offer existing and potential students the ability to compete in athletic contests on campus, which could adversely affect enrollment at the*

**ANSWER:**   Defendants deny the allegations in this Paragraph and specifically deny that Edgewood has or will suffer any unreasonable or undue burdens as a result of the City's interpretation and application of its zoning laws and Edgewood's Master Plan.

134.  *In 2018, after the City approved its Master Plan, the University of Wisconsin began its Nielsen Outdoor Tennis Court Expansion project. **Exhibit P**, Nielsen Outdoor Tennis Court Expansion Documents.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

135.  *This project replaced all of the surfacing and fencing of the existing Nielsen Stadium. It also added two additional outdoor tennis courts, outdoor fencing, outdoor seating, outdoor lighting, an outdoor sound system, and landscaping.*

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

136.    *In its site plan review application submitted to the City, the University of Wisconsin described the use of the Nielsen Stadium as authorized by Section 28.097(3) within the Campus Institutional District Ordinances.*

**ANSWER:**    The text of the site plan review application speaks for itself. Defendants deny any allegations inconsistent with the text of the site plan review application.

137.    *This site plan review application does not further describe the use of the Nielsen Stadium. Nor does it disclose that the University of Wisconsin intends to host competitive tennis matches or other outdoor athletic contests at Nielsen Stadium.*

**ANSWER:**    The text of the site plan review application speaks for itself. Defendants deny any allegations inconsistent with the text of the site plan review application.

138.    *The University of Wisconsin's Master Plan did not disclose many details of the Nielsen Outdoor Tennis Court Expansion project. For example, the University of Wisconsin's Master Plan does not disclose the university's plan to construct new outdoor courts, outdoor seating, outdoor lights, or an outdoor sound system, all of which it has since done.*

A**NSWER**:    The text of the University of Wisconsin's Master Plan speaks for itself. Defendants deny any allegations inconsistent with the text of the University of Wisconsin's Master Plan.

139.    *Additionally, as related to the outdoor lights, the University of Wisconsin's Master Plan did not disclose the location or height of any of the light poles.*

**ANSWER:**    The text of the University of Wisconsin's Master Plan speaks for itself. Defendants deny any allegations inconsistent with the text of the University of Wisconsin's Master Plan.

140.    *The Nielsen Outdoor Tennis Court Expansion is mentioned only briefly in the University of Wisconsin's Master Plan.*

**ANSWER:**    The text of the University of Wisconsin's Master Plan speaks for itself. Defendants deny any allegations inconsistent with the text of the University of Wisconsin's Master Plan.

141.    *The City approved the University of Wisconsin's site plan review application for the Nielsen Outdoor Tennis Court Expansion project.*

**ANSWER:**    Defendants admit the allegations in this Paragraph.

142.    *The City did not require the University of Wisconsin to amend its Master Plan in order to complete the Nielsen Outdoor Tennis Court Expansion project.*

**ANSWER:**    Defendants object to this Paragraph as vague and confusing. Subject to that objection, Defendants deny that the University of Wisconsin began construction for the Nielson Outdoor Tennis Court Expansion project after the effective date of its Master Plan.

143.    *The University of Wisconsin has completed the Nielsen Outdoor Tennis Court Expansion project, and the Nielsen Stadium is currently fully operational, including hosting athletic contests.*

**ANSWER:**    Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

144.    *On May 31, 2019, Edgewood filed a timely appeal to the Zoning Board, challenging the Official Notices.* **Exhibit Q**, *Edgewood Notice of Appeal to ZBA.*

**ANSWER:**    Defendants admit the allegations in this Paragraph.

145.    *On July 11, 2019, the Zoning Board held a duly noticed public hearing on Edgewood's appeal.* **Exhibit R**, *Transcript of ZBA Hearing.*

**ANSWER:**    Defendants admit the allegations in this Paragraph.

146.    *The Zoning Board is composed of five members, one of whom serves as chairperson.*

**ANSWER:**    Defendants admit the allegations in this Paragraph.

147. *The chairperson does not vote on the appeal or participate in deliberations, unless his vote is needed as a tiebreaker.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

148. *At the close of this hearing, all four members of the Zoning Board who were allowed to deliberate and vote on Edgewood's appeal voted to deny Edgewood's appeal and affirm Administrator Tucker's Notices of Violations against Edgewood, thus prohibiting Edgewood from holding athletic contests on its athletic field.*

**ANSWER:**   Defendants admit that at the close of this hearing, all four members of the Zoning Board who were allowed to deliberate and vote on Edgewood's appeal voted to deny Edgewood's appeal and affirm Administrator Tucker's Notices of Violations against Edgewood. The remainder of this Paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny those allegations.

149. *The chairperson did not vote, because his vote was not needed for a tiebreaker.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

150. *The Zoning Board did not enter a formal opinion explaining the legal rationale for its decision.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

151. *While members had the opportunity individually to explain their rationale to the public prior to entering their vote, only three members did so.*

**ANSWER:**   Defendants admit the allegations in this Paragraph.

152. *The day after the Zoning Board of Appeals' hearing, the City Attorney sent a letter to Edgewood's counsel stating that "[f]urther enforcement of the zoning code, the ZBA decision, and the notices of violation now rests with the discretion of the City Attorney."* **Exhibit S**, *Letter from City Attorney Michael P. May to Attorney Matthew Lee (July 12, 2019).*

**ANSWER:**   Defendants admit that this paragraph accurately quotes part of a letter the City Attorney sent to Edgewood's counsel on July 12, 2019.

153.   *On July 18, 2019, the Zoning Board of Appeals issued its official letter confirming its denial of Edgewood's appeal.* **Exhibit T**, *Letter from Winn Collins, ZBA Chair, dated July 18, 2019. The letter was received by the Office of the City of Madison's Building Inspection Division on July 22, 2019, which became the official date of filing of the Zoning Board of Appeals' decision.* **Exhibit U**, *Email from Administrative Clerk of the City of Madison Building Inspection Division.*

ANSWER:   Defendants admit the allegations in this Paragraph.

## COUNT I

154.   *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**   Defendants incorporate by reference their answers to all preceding paragraphs.

155.   *Congress defined "religious exercise" to broadly include:*

> *"any exercise of religion, whether or not compelled by, or central to, a system of religious belief," and specifies that the "use, building, or conversion of real property for the purpose of religious exercise shall be considered to be religious exercise of the person or entity that uses or intends to use the property for that purpose."*

*42 U.S.C. 2000cc-5(7).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that the definition of "religious exercise" in 42 § U.S.C. 2000cc-5(7) applies outside the context of RLUIPA. The text of that statute speaks for itself.

156.   *Congress further directed that RLUIPA should be "construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution." 42 U.S.C. 2000cc-3(g).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of 42 U.S.C. § 2000cc-3(g) speaks for itself.

157. *Under RLUIPA's Equal Terms provision, "[n]o government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution." 42 U.S.C. § 2000cc(b)(1).*

ANSWER:   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of 42 U.S.C. § 2000cc(b)(1) speaks for itself.

158. *The plaintiff bears the initial burden of "produc[ing] prima facie evidence to support a[n equal terms] claim," and thereafter "the government . . . bear[s] the burden of persuasion on any element of the claim." 42 U.S.C. § 2000cc–2(b).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of 42 U.S.C. § 2000cc-2(b) speaks for itself.

159. *A claimant must produce prima facie evidence that: (1) the claimant is a religious assembly or institution, (2) subject to a land use regulation that (3) treats the religious assembly or institution on less than equal terms, with (4) a nonreligious assembly or institution. 42 U.S.C. § 2000cc(b)(1)).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of 42 U.S.C. § 2000cc(b)(1) speaks for itself.

160. *Edgewood is a religious institution.*

**ANSWER:**   Defendants object to this Paragraph as vague and confusing. Subject to that objection, Defendants state that this Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that Edgewood automatically qualifies as a "religious institution" for every activity Edgewood engages in.

161. *Edgewood's use of its field is subject to the City's land use regulations, which include but are not limited to the City's Zoning Code, Administrator*

38

> *Tucker's interpretations and enforcement actions, and the Zoning Board's decision.*

**ANSWER:**   To the extent a response is required, Defendants admit the allegations in this Paragraph.

162.  *The City has treated Edgewood on less than equal terms with the non-religious institutions located and operating within the City's Campus-Institutional District.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

163.  *Edgewood is no different than the nonreligious high schools or the University of Wisconsin from the standpoint of the accepted zoning criteria in the Campus-Institutional District.*

**ANSWER:**   Defendants object to the allegations in this Paragraph as vague and confusing. Subject to that objection, Defendants admit that the University of Wisconsin and Edgewood are both located within Campus-Institutional Districts. Defendants deny that the facts and circumstances are the same between them and deny any remaining allegations in this Paragraph.

164.  *The City has allowed the nonreligious schools in the Campus-Institutional Zoning District, including the public high schools and the University of Wisconsin, to continue to use their athletic fields and facilities for athletic contests and other uses related to their primary missions but is prohibiting Edgewood from doing the same.*

**ANSWER:**   Defendants deny that the City has applied its zoning laws differently to Edgewood than to nonreligious schools located within Campus-Institutional Districts; the facts and circumstances are not the same. Defendants also deny that it has prohibited Edgewood from using its field for its primary mission and deny any remaining allegations in this Paragraph.

165.  *The City has allowed the nonreligious schools in the Campus-Institutional Zoning District, including the four public high schools and the University of Wisconsin, to continue to use their athletic fields and facilities and to erect adequate lighting for athletic contests but is prohibiting Edgewood*

*from doing the same.* **Exhibit V**, *Comparison Chart of Wisconsin Public Schools and Edgewood Facilities.*

**ANSWER:**    Defendants deny that the City has applied its zoning laws differently to Edgewood than to nonreligious schools located within Campus-Institutional Districts; the facts and circumstances are not the same. Defendants also deny any remaining allegations in this Paragraph.

166.    *The City has allowed the University of Wisconsin to construct new outdoor athletic facilities pursuant to the University of Wisconsin's Master Plan and to use them for athletic contests, even though the University of Wisconsin did not identify "athletic contests" as an existing or future use of its fields.*

**ANSWER:**    Defendants deny the allegations in this Paragraph and specifically deny that the University of Wisconsin's Master Plan was in effect when construction on those facilities began.

167.    *For example, the City has allowed the University of Wisconsin to construct a new tennis stadium with one thousand new seats and stadium lighting in its Campus-Institutional District and to use it for athletic contests, even though the University of Wisconsin did not identify "athletic contests" as an existing or future use of the stadium or mention the new stadium lighting in its master plan.*

**ANSWER:**    Defendants deny the allegations in this Paragraph and specifically deny that the University of Wisconsin's Master Plan was in effect when construction on that facility began.

168.    *The City, however, is prohibiting Edgewood from using its athletic field for athletic contests and prohibited Edgewood from installing lights, even after Edgewood's lighting application was approved by the City.*

**ANSWER:**    Defendants object to the allegations in this Paragraph as argumentative. Subject to that objection, Defendants deny the allegations in this Paragraph.

169.    *The City's disparate treatment of Edgewood's religious land uses is an as-applied violation of the equal terms provision of RLUIPA.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

170.    *The City's disparate treatment of Edgewood's use of its athletic field with approved lighting is an as-applied violation of the equal terms provision RLUIPA.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

171.    *By issuing notices of violation only to Edgewood and not to the University of Wisconsin—even though both use their athletic fields for the same use, and neither explicitly or exhaustively list that use in their Master Plans—Administrator Tucker has violated RLUIPA's Equal Terms provision.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

172.    *By overseeing Administrator Tucker and failing to use his authority to correct his Equal Terms violation, Director Hank has also violated RLUIPA's Equal Terms provision.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

173.    *By denying Edgewood's appeal of Administrator Tucker's notices of violation, thus affirming the issuance of Administrator Tucker's notices of violation, the Zoning Board has violated RLUIPA's Equal Terms provision.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

174.    *As a direct result of the City's violations of Edgewood's rights under 42 USC § 2000cc(b), as alleged above, Edgewood is suffering irreparable harm for which there is no adequate remedy at law.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

175.    *Furthermore, as a direct result of the City's violations of Edgewood's rights under 42 USC § 2000cc(b), as alleged above, Edgewood has suffered damages and is entitled to recover equitable relief, costs, and attorney fees.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

176.    *WHEREFORE Edgewood is entitled to the relief requested below.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

## COUNT II

177.     *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**     Defendants incorporate by reference their answers to all preceding paragraphs.

178.     *Congress provided in Section 2(a)(1) of RLUIPA statutory protections for "religious exercise" as follows:*

> *"No government shall impose or implement a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden on that person, assembly, or institution . . . is in furtherance of a compelling government interest [and] is the least restrictive means of furthering that compelling government interest."*

> *42 U.S.C. 2000cc(a)(1).*

**ANSWER:**     This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of 42 U.S.C. § 2000cc(a)(1) speaks for itself. Defendants deny any allegations inconsistent with the statutory text.

179.     *The City has made an "individualized assessment" of Edgewood's land uses within the meaning of 42 U.S.C. § 2000cc(a)(2)(C).*

**ANSWER:**     This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of 42 U.S.C. § 2000cc(a)(2)(C) speaks for itself. Defendants deny any allegations inconsistent with the statutory text.

180.     *The City's imposition of its land use regulations on Edgewood's use of its field affects "commerce among the several States" within the meaning of 42 U.S.C. § 2000cc(a)(2)(B).*

**ANSWER:**     This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of 42 U.S.C. § 2000cc(a)(2)(B) speaks for

itself. Defendants deny that the activities at issue in this litigation constitute interstate commerce and deny any allegations inconsistent with the statutory text.

181. *If the plaintiff can show that a land use regulation has been implemented or imposed in a manner that substantially burdens its religious exercise, then the burden shifts to the government to show the burden furthers a compelling government interest and is the least restrictive means of furthering that interest. 42 U.S.C. § 2000cc-2(b).*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of 42 U.S.C. § 2000cc-2(b) speaks for itself. Defendants deny any allegations inconsistent with the statutory text.

182. *A land use decision that prevents a religious institution from building new facilities or using its existing facilities to meet its religious needs and those of its members imposes a substantial burden on that institution's religious exercise.*

**ANSWER:** This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in this Paragraph.

183. *The City's decision to deny and restrict Edgewood's continued use of its field and to provide lighting for the same substantially inhibits Edgewood's religious exercise by preventing the school, a religious institution, from using its existing facilities to meet its religious needs and those of its students.*

**ANSWER:** Defendants deny the allegations in this Paragraph.

184. *The City's imposition of its land use regulations directly contrary to their plain meaning to deny and restrict Edgewood's use of its track and field is a substantial burden on Edgewood's religious exercise that is not supported by a compelling governmental interest, nor is it the least restrictive means of furthering any compelling governmental interest.*

**ANSWER:** Defendants deny the allegations in this Paragraph.

185. *The manner in which the City has imposed its land use regulations to deny and restrict Edgewood's use of its track and field is not supported by a compelling governmental interest, nor is it the least restrictive means of furthering any compelling governmental interest.*

**ANSWER:** Defendants deny the allegations in this Paragraph.

186. *Accordingly, the City has imposed a "substantial burden" on Edgewood's religious exercise by restricting its ability to use its athletic field that does not pass strict scrutiny, in violation of the Religious Land Use and Institutionalized Persons Act, 42 USC § 2000cc(a)(1).*

**ANSWER:** Defendants deny the allegations in this Paragraph.

187. *The City has imposed its land use regulations in a manner which has placed substantial pressure on Edgewood and its students to modify their behavior and violate their religious beliefs.*

**ANSWER:** Defendants deny the allegations in this Paragraph.

188. *Edgewood is unable to fully live out its mission of forming students for spiritual, academic and personal excellence because its students do not have the necessary access to the athletic field to participate in athletic contests and other uses related to the institution's primary mission. Edgewood students are unable, in this way, to uphold Edgewood's Mission Statement and several integral aspects of a Sinsinawa Dominican education.*

**ANSWER:** Defendants lack knowledge or information sufficient to form a belief about the truth of the allegations in this Paragraph and therefore deny the same.

189. *The City's actions have created considerable delay, expense and uncertainty for Edgewood in its efforts to use its field.*

**ANSWER:** Defendants deny the allegations in this Paragraph.

190. *The City's denial has caused Edgewood to suffer significant financial loss, including, but not limited to, attorneys' fees, professional fees, and costs from the inability to host athletic contests on its athletic field.*

**ANSWER:** Defendants deny the allegations in this Paragraph.

191. *By issuing notices of violation to Edgewood for hosting athletic contests on its athletic fields, Administrator Tucker has imposed a substantial burden on Edgewood's religious exercise with no compelling reason, thus he has violated RLUIPA's Substantial Burden provision.*

**ANSWER:** Defendants deny the allegations in this Paragraph.

192.  *By overseeing Administrator Tucker and failing to use his authority to correct his Substantial Burden violation, Director Hank has also violated RLUIPA's Substantial Burden provision.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

193.  *By denying Edgewood's appeal of Administrator Tucker's notices of violation, thus affirming the issuance of Administrator Tucker's notices of violation, the Zoning Board has violated RLUIPA's Substantial Burden provision.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

194.  *As a direct result of the City's violations of Edgewood's rights protected under 42 USC § 2000cc(a) of the Act, Edgewood is suffering irreparable harm for which there is no adequate remedy at law.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

195.  *Furthermore, as a direct result of the City's violations of Edgewood's rights under 42 USC § 2000cc(a) of the Act as alleged above, Edgewood is entitled to equitable relief and the recovery of its costs and attorney fees.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

196.  *WHEREFORE Edgewood is entitled to the relief requested below.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

## COUNT III

197.  *Under Wis. Stat. § 62.23(7)(e)10, "[a]ny person . . . aggrieved by any decision of the board of appeals . . . may, within 30 days after the filing of the decision in the office of the board of appeals, comment an action seeking the remedy available by certiorari."*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Wis. Stat. § 62.23(7)(e)10 speaks for itself.

198.  *Edgewood's right to use its property for athletic contests is protected by M.G.O. § 28.097.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent that a response is required, Defendants deny the allegations in this Paragraph.

199.   *In upholding the Zoning Administrator's enforcement actions, the Zoning Board has infringed that right.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

200.   *The Zoning Board's ruling upholding Administrator Tucker's enforcement actions was rife with errors of fact and law.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

201.   *Accordingly, Edgewood is "aggrieved by [the] decision of the board of appeals." Wis. Stat. § 62.23(7)(e)10.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

202.   *A state-law claim seeking a remedy for such injury falls within this Court's supplemental jurisdiction. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 118 (1997).*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants admit that this Court may exercise supplemental jurisdiction over Edgewood's state-law claims to the extent it has jurisdiction over Edgewood's federal claims.

## COUNT IV

203.   *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**   Defendants incorporate by reference their answers to all preceding paragraphs.

204.   *The City's prohibition of Edgewood's use of its field for any activities other than team practices and physical education classes violates Edgewood's and its  students' freedom of speech as it prohibits Edgewood*

*and its students from engaging in any speech or speech related activity on the field.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

205.   *The City's prohibition of Edgewood's use of its field for any activities other than team practices and physical education classes violates Edgewood's and its students' freedom of assembly as it prohibits Edgewood and its students from assembling on the field for any purpose other than team practices and physical education classes.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

206.   *The City's prohibition of Edgewood's use of its field for any activities other than team practices and physical education classes directly burdens Edgewood's religious practices and fails to satisfy the requirements of neutrality and general applicability.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

207.   *The City's prohibition of Edgewood's use of its field for any activities other than team practices and physical education classes impermissibly regulates Edgewood's assemblies and speech based on their content.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

208.   *The City's prohibition of Edgewood's use of its field for any activities other than team practices and physical education classes violates Edgewood's hybrid rights of free exercise, freedom of assembly, freedom of association, and freedom of speech.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

209.   *The City has made a content based regulation of Edgewood's expressive conduct and assemblies that is subject to strict scrutiny.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

210.   *The City's prohibition is not justified by a compelling government interest nor narrowly tailored to advance any such interest.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

211.   *By issuing notices of violation to Edgewood for hosting athletic contests on its athletic fields, Administrator Tucker has infringed Edgewood's First*

*Amendment protected activity with no compelling reason, thus he has violated the First Amendment, as incorporated.*

**ANSWER:**    Defendants deny the allegations in this Paragraph.

212.    *By overseeing Administrator Tucker and failing to use his authority to correct his First Amendment violation, Director Hank has also violated the First Amendment, as incorporated.*

**ANSWER:**    Defendants deny the allegations in this Paragraph.

213.    *By denying Edgewood's appeal of Administrator Tucker's notices of violation, thus affirming the issuance of Administrator Tucker's notices of violation, the Zoning Board has violated the First Amendment, as incorporated.*

**ANSWER:**    Defendants deny the allegations in this Paragraph.

214.    *WHEREFORE Edgewood is entitled to the relief requested below.*

**ANSWER:**    Defendants deny the allegations in this Paragraph.

## COUNT V

215.    *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**    Defendants incorporate by reference their answers to all preceding paragraphs.

216.    *The City has declared that Edgewood is not permitted to hold "athletic contests" on its athletic field.*

**ANSWER:**    Defendants object to the allegations in this Paragraph as vague and confusing. Subject to that objection, Defendants admit that under Mr. Tucker's interpretation, Edgewood is not allowed to hold "athletic contests" on its field pursuant to its existing Master Plan. Defendants deny the remaining allegations in this Paragraph.

217.    *The City has not defined the term "athletic contests" and without a definition the prohibition of "athletic contests" is void for vagueness.*

48

**ANSWER:**     Defendants admit that the City has not defined the term "athletic contests."

Defendants deny the remaining allegations in this Paragraph.

218.     *Persons of common intelligence must necessarily guess at the meaning of "athletic contests" and differ as to its application.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

219.     *The City's prohibition of "athletic contests" vests virtually complete discretion in the hands of the Zoning Administrator and fails to provide the minimal guidelines required for due process.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

220.     *By issuing notices of violation to Edgewood based on an impermissibly vague ordinance Tucker has violated the Due Process Clause.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

221.     *By overseeing Tucker and failing to use his authority to correct his due process violation, Hank has also violated the Due Process Clause, as incorporated.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

222.     *By denying Edgewood's appeal of Tucker's notices of violation, thus affirming the issuance of Tucker's notices of violation, the Zoning Board of Appeals has violated the Due Process Clause.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

223.     *WHEREFORE Edgewood is entitled to the relief requested below.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

## COUNT VI

224.     *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**     Defendants incorporate by reference their answers to all preceding paragraphs.

225.     *Article I, Section 18 of the Wisconsin Constitution provides:*

> *Freedom of worship; liberty of conscience; state religion; public funds. The right of every person to worship Almighty God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend, erect or support any place of worship, or to maintain any ministry, without consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries.*

*WI Const. Art. 1, § 18.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, the text of the Wisconsin Constitution speaks for itself.

226. *In* Coulee Catholic Sch. v. Labor & Indus. Review Comm'n, *2009 WI 88, ¶ 61, 320 Wis. 2d 275, 768 N.W.2d 868, the Wisconsin Supreme Court interpreted Article I, Section 18 of the Wisconsin State Constitution to mean that strict scrutiny is to be applied to any situation involving violations of an individual or organization's freedom of conscience.*

> *When faced with a claim that a state law violates an individual or organization's freedom of conscience, we have generally applied the compelling state interest/least restrictive alternative test. Under this test, the religious organization has to prove (1) that it has a sincerely held religious belief, and (2) that such belief is burdened by the application of the state law at issue. Upon this showing, the burden shifts to the state to prove (3) that the law is based upon a compelling state interest (4) that cannot be served by a less restrictive alternative.*

> Id. *at 886.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that *Coulee Catholic Sch. v. Labor & Indus. Review Comm'n*, 2009 WI 88, ¶ 61, 320 Wis. 2d 275, 768 N.W.2d 868 applies to the facts and circumstances of this case.

227. *In* Coulee, *the Wisconsin Supreme Court established a framework by which religious freedom claims are analyzed. In this case, Edgewood has*

*the burden to prove that (1) it has a sincerely held religious belief and that (2) its sincerely held religious belief is burdened by the City's application of its zoning laws. The burden then shifts to the City to prove (1) that the zoning laws at issue are based upon a compelling state interest and that (2) the interest cannot be served by a less restrictive means. <u>Id</u>.*

**ANSWER:**   This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that *Coulee Catholic Sch. v. Labor & Indus. Review Comm'n*, 2009 WI 88, ¶ 61, 320 Wis. 2d 275, 768 N.W.2d 868 applies to the facts and circumstances of this case.

228. *The City cannot provide a compelling state interest for its application of the zoning laws to Edgewood and the resultant burden on Edgewood's exercise of its sincerely held religious beliefs. There is no compelling state interest for prohibiting, at all times, high school aged children from playing games on an athletic field.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

229. *Even if it could provide a compelling state interest for its treatment of Edgewood, the City cannot prove that its actions are the least restrictive means of achieving that interest.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

230. *By prohibiting Edgewood from playing games and engaging in other activities which further the religious mission of the school on its athletic field during the life of the Master Plan, the City has imposed a burden on Edgewood's exercise of its sincerely held religious beliefs, the City's actions constitute an "unlawful" and unnecessary "interference" with Edgewood's "rights of conscience." Id.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

231. *By prohibiting Edgewood from playing games and engaging in other activities which further the religious mission of the school on its athletic field during the life of the Master Plan, the City has violated Article I, Section 18 of the Wisconsin Constitution by burdening Edgewood's constitutionally-protected religious exercise and imposing its zoning laws on Edgewood in a manner that interferes with Edgewood's religious freedom.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

232. *By issuing notices of violation to Edgewood for hosting athletic contests on its athletic fields, Administrator Tucker has infringed on Edgewood's Article I, Section 18 protected activity with no compelling reason, thus he has violated Article I, Section 18.*

**ANSWER:**    Defendants deny the allegations in this Paragraph.

233. *By overseeing Administrator Tucker and failing to use his authority to correct his Article I, Section 18 violation, Director Hank has also violated Article I, Section 18.*

**ANSWER:**    Defendants deny the allegations in this Paragraph.

234. *By denying Edgewood's appeal of Administrator Tucker's notices of violation, thus affirming the issuance of Administrator Tucker's notices of violation, the Zoning Board has violated Article I, Section 18.*

**ANSWER:**    Defendants deny the allegations in this Paragraph.

235. *WHEREFORE Edgewood is entitled to the relief requested below.*

**ANSWER:**    Defendants deny the allegations in this Paragraph.

## COUNT VII

236. *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**    Defendants incorporate by reference their answers to all preceding paragraphs.

237. *Under Wisconsin law, a property owner's rights vest upon submittal of an application for a building permit that conforms to the zoning or building code requirements in effect at the time of application.*

**ANSWER:**    This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny that this general rule applies to these facts and circumstances and specifically deny that Edgewood's application conformed to the zoning or building code requirements in effect at the time of application.

238. *Edgewood submitted an application pursuant to and in compliance with Chapter 10 of the City of Madison ordinances for Outdoor Lighting for its Edgewood Campus on February 22, 2019.*

**ANSWER:**   Defendants admit that Edgewood submitted an application for Outdoor Lighting for its Edgewood Campus on February 22, 2019. The remainder of the allegations in this Paragraph contain legal conclusions to which no response is required. To the extent a response is required, Defendants deny those allegations.

239. *As shown on the attached City of Madison Site Plan Verification page, the application was reviewed and approved for compliance with lighting and zoning on February 27, 2019 and March 1, 2019.*

**ANSWER:**   Defendants deny the allegations in this Paragraph. Defendants affirmatively state that Mr. Tucker is the person with final authority to approve or deny such an application, and Mr. Tucker determined that the construction and use of a lighting system was not permitted pursuant to Edgewood's Master Plan.

240. *Edgewood's rights vested upon the submittal of its compliant and City-approved application.*

**ANSWER:**   This Paragraph contains a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in this Paragraph.

241. *Edgewood's Master Plan explicitly and intentionally addresses outdoor lighting and related height standards in Section 3.6 "Architectural Guidelines For Perimeter Buildings."*

**ANSWER:**   Defendants lack knowledge or information sufficient to form a belief about the truth of the "explicitly and intentionally" allegation in this Paragraph and therefore deny the same. As to the remaining allegations in this Paragraph, the text of Edgewood's Master Plan speaks for itself. Defendants deny any allegations inconsistent with the text of Edgewood's Master Plan.

242. *The Master Plan notes in Subsection 7 of Section 3.6 the following self-imposed additional requirements for outdoor lighting beyond compliance with the City's Outdoor Lighting Ordinance (emphasis added):*

7. <u>Site and Building Lighting</u>

a. *Utilize dark sky compliant light fixtures*
b. *Provide lighting that is required for pedestrian safety and building code required exit lighting. Reduce glare and light spill towards the neighborhood, **use lower height site lighting** with non-glare and cut off shielding.*

**ANSWER:**   The text of Edgewood's Master Plan speaks for itself. Defendants deny any allegations inconsistent with the text of Edgewood's Master Plan.

243. *Edgewood conformed the height of its light poles (80 feet) to match lighting approved and installed at Mansfield Stadium at Memorial High School in 2018 as that facility has (i) residential neighbors in close proximity to their lights and athletic fields, just like Edgewood, and (ii) has the same zoning classification as Edgewood.*

**ANSWER:**   Defendants admit that Mansfield Stadium at Memorial High School is located within Campus-Institutional District zoning. Defendants lack knowledge or information sufficient to form a belief about the truth of the remaining allegations in this Paragraph and therefore deny the same.

244. *The City is also arbitrarily and capriciously insisting that the default height for Edgewood's light poles is zero (0) feet.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

245. *The City is arbitrarily and capriciously withholding the electrical permits necessary to erect Edgewood's approved and compliant lighting structures on its athletic field.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

246. *The City permitted University of Wisconsin to install and use 60 foot tall stadium lights at its new Nielsen Tennis Stadium even though University of Wisconsin's Master Plan did not identify the height of the light poles.*

**ANSWER:**   Defendants deny the allegations in this Paragraph.

247.     *WHEREFORE Edgewood is entitled to the relief requested below.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

## <u>COUNT VIII</u>

248.     *The allegations contained in all preceding paragraphs are incorporated here by reference.*

**ANSWER:**     Defendants incorporate by reference their answers to all preceding paragraphs.

249.     *Under Section 10.085, Edgewood has a clear legal right to receive its already approved electrical permit from the City and from Hank.*

**ANSWER:**     This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in this Paragraph.

250.     *Likewise, Defendants have a clear legal duty under Section 10.085 to deliver the already approved electrical permit to Edgewood.*

**ANSWER:**     This Paragraph alleges a legal conclusion to which no response is required. To the extent a response is required, Defendants deny the allegations in this Paragraph.

251.     *Defendants' refusal to comply with Section 10.085 by timely delivering the permit has caused and will continue to cause substantial injury to Edgewood.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

252.     *Defendants' refusal to comply with Madison General Ordinance 10.085 is further evidence of the Defendants' unequal treatment of Edgewood.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

253.     *Unless this Court grants relief, Plaintiffs have no other adequate remedy at law.*

**ANSWER:**     Defendants deny the allegations in this Paragraph.

## AFFIRMATIVE DEFENSES

1.      As a first affirmative defense, Defendants allege that Edgewood's complaint fails to state claims upon which relief may be granted.

2.      As a second affirmative defense, Defendants allege that Edgewood failed to exhaust remedies or otherwise failed to comply with the statutory prerequisites to bringing the action.

3.      As a third affirmative defense, Defendants allege that Edgewood's claims are not ripe for adjudication.

4.      As a fourth affirmative defense, Defendants allege that Edgewood may have failed to mitigate its damages.

5.      As a fifth affirmative defense, Defendants allege that some or all of Edgewood's claims may be barred by claim or issue preclusion.

6.      As a sixth affirmative defense, Defendants allege that Edgewood may lack standing to raise some or all of its claims.

7.      As a seventh affirmative offense, Defendants allege that Edgewood may be estopped from pursuing its claims or may have waived its right to pursue the claims by reason of its own actions, omissions and course of conduct.

8.      As an eighth affirmative defense, Defendants allege that they are protected by common law and statutory immunities and privileges, including municipal immunity.

9.      As a ninth affirmative defense, Defendants allege that Edgewood failed to comply with the written notice provisions of Wis. Stat. § 893.80(1d).

10.      As a tenth affirmative defense, Defendants allege that Matthew Tucker and George Hank have immunity pursuant to Wis. Stat. § 893.80(4).

11.     As an eleventh affirmative defense, Defendants allege that Edgewood has not relied upon Defendants' statements or conduct to their detriment.

12.     Defendants at all times acted in good faith based on the current state of the law.

WHEREFORE, defendants request dismissal of plaintiff's complaint as a matter of law and such further relief as the court deems appropriate.

DATE:          October 8, 2019

Respectfully submitted,

*/s/ Barry J. Blonien*
Sarah A. Zylstra, State Bar No. 1033159
Barry J. Blonien, State Bar No. 1078848
BOARDMAN & CLARK LLP
1 South Pinckney Street, Suite 410
P. O. Box 927
Madison, WI  53701-0927
Telephone: (608) 257-9521
Facsimile: (608) 283-1709
szylstra@boardmanclark.com
bblonien@boardmanclark.com
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 8, 2019, a copy of the foregoing was served electronically, via CM/ECF, on all counsel of record.

*/s/ Barry J. Blonien*